## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **EDSCHA NORTH AMERICA, INC. d/b/a** | ) | |
| **EDSCHA U.S.A., INC. and** | ) | **Case No. 09-39055** |
| **EDSCHA JACKSON, INC.** | ) | |
| | ) | |
| | ) | **Hon. Carol A. Doyle** |
| | ) | **Chief Bankruptcy Judge** |
| Debtor. | ) | |
| | ) | |
| | ) | **Date:  March 23, 2010** |
| | ) | **Time: 10:00 a.m.** |

### NOTICE OF MOTION

To:    See Attached Service List

PLEASE TAKE NOTICE that on **March 23, 2010, at 10:00 a.m.** or as soon thereafter as counsel may be heard, the undersigned will appear before the Honorable Carol A. Doyle, Bankruptcy Judge, or such other judge as may be sitting in her place and stead, in Courtroom 742, 219 South Dearborn Street, Chicago, Illinois and shall then and there present the attached **MOTION OF THE DEBTOR TO APPROVE PRIVATE SALE OF ASSETS AND, IN THE EVENT THE PRIVATE SALE FAILS TO CLOSE, (1) ESTABLISH SALE PROCEDURES FOR AUCTION SALE, (B) SETTING HEARING DATES AND (C) APPROVING FORM OF NOTICE**, at which time and place you may appear as you see fit.

Respectfully submitted,

EDSCHA NORTH AMERICA, INC.,
debtor and debtor in possession

By:    /s/ Michael Gesas
            One of its attorneys

Michael L. Gesas (ARDC #06186924)
Michelle G. Novick (ARDC# 06207045)
Kevin H. Morse (ARDC #06297244)
ARNSTEIN & LEHR LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
Telephone: 312.876.7100
Facsimile: 312.876.0288

## CERTIFICATE OF SERVICE

I, Michael Gesas, an attorney, certify that I caused a copy of the attached Notice of Motion and Motion to be served on the parties listed on the attached Service List, via facsimile or by overnight mail, in addition to those parties receiving notification by participation in the Court's ECF system, as indicated on the attached Service List, on March 3, 2010.

/s/ Michael Gesas

8920214.1

## SERVICE LIST

*In re Edscha North America, Inc. d/b/a Edscha U.S.A., Inc. and Edscha Jackson, Inc., Debtor*
**Case No. 09-39055**

| | |
|---|---|
| United States Trustee<br>Attn: Cameron M. Gulden<br>219 South Dearborn Street<br>Room 873<br>Chicago, IL 60604<br>Via ECF Service<br>USTPRegion11.ES.ECF@usdoj.gov | HVB Banque Luxembourg Societe<br>FKA-KRE/SFB2, 4, rue Alphonse<br>Weiker, Luxembourg<br>LUX L-2721<br>Via facsimile 352 42 72 4500 |
| Grant Industries, Inc. Organization<br>33415 Grossbeck Highway<br>Fraser, MI 48026<br>Via facsimile 586-293-9346 | Ranger Die, Inc.<br>2024 Kinney N.W.<br>Grand Rapids, MI 49534<br>Via facsimile 616-453-7682 |
| Intermediate Capital Group PLC<br>20 Old Broad Street<br>London EC2N 1DP<br>United Kingdom<br>Via overnight mail | Intermediate Capital Group PLC<br>Herr Brenke<br>An der Welle 5<br>69322 Frankfurt, Germany<br>Via overnight mail |
| 2880 Centerpoint Investments, LLC<br>c/o Bernard Financial<br>Etkin Equities, 200 Franklin Center<br>29100 Northwestern Highway<br>Southfield, MI 48341<br>Via facsimile 248-358-2180 | CEF & Associates<br>c/o Timothy Ferrell<br>Simon, Galasso & Frantz PC<br>363 West Big Beaver Road #250<br>Troy, MI 48084<br>Via facsimile 248-720-0291 |
| Accident Fund Insurance<br>232 South Capital Avenue<br>Lansing, MI 48933<br>Via facsimile 517-367-6713 | A.V. Gauge & Fixture<br>4000 Delduca Drive<br>Old Castle<br>Ontario, Canada N0R1L0<br>Via facsimile 519-737-7844 |
| Chrysler LLC<br>c/o Chris Maeso<br>Dickinson Wright PLLC<br>38525 Woodward Avenue, Suite 2000<br>Bloomfield Hills, MI 48304<br>Via email CMaeso@dickinson-wright.com<br>Via facsimile 248-433-7274 | Ford Motor<br>Stephen S. LaPlante<br>Timothy Engling<br>Miller Canfield Paddock Stone PLC<br>150 West Jefferson Avenue, Suite 2500<br>Detroit, MI 48226<br>Via ECF Service<br>laplante@MillerCanfield.com;<br>engling@MillerCanfield.com;<br>swansonm@MillerCanfield.com |

| Cleveland Die & Manufacturing | Detroit Testing laboratory, Inc. |
|---|---|
| 20303 First Ave.<br>Middleburg Heights, OH 44130<br>Via facsimile 440-243-1702 | 27485 George Merrelli Drive<br>Warren, MI 48092<br>Via facsimile 586-754-9045 |
| Eurospec Tooling<br>130 Harry Walker Pkwy.<br>Newmarket<br>Ontario, Canada L3Y7B2<br>Via facsimile 905-898-0851 | GE Capital<br>P.O. Box 640387<br>Pittsburg, PA 155264-0387<br>Via overnight mail |
| Mercedes<br>c/o David D. Dowd III<br>Burr and Forman<br>420 North 20th Street, Suite 3400<br>Birmingham, AL 35203<br>Via email ddowd@burr.com<br>Via facsimile 205-244-5629 | HEICO Umformtechnik<br>Postfatch 2010<br>59469 ENSE<br>Niederense, Germany<br>Via facsimile 49(0) 2938/805-198 |
| William V. Wilson<br>General Electric Capital Corp.<br>1301 Virginia Drive, Suite 200<br>Fort Washington, PA 19034<br>Via overnight mail | St. Paul Travelers<br>c/o Bank of America<br>91287 Collections Center Drive<br>Chicago, IL 60693-1287<br>Via facsimile 860-277-8604 |
| Nissan Motor<br>c/o Michael R. Paslay<br>Waller Lansden Dortch & Davis LLP<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>Via email Mike.Paslay@wallerlaw.com<br>Via facsimile 615-244-6804 | General Motors<br>c/o Donald F. Baty, Jr.<br>Honigman Miller Schwartz and Cohn<br>2290 First National Building<br>660 Woodward<br>Detroit, MI 48226<br>Via email DBaty@honigman.com<br>Via facsimile 313-465-7315 |
| Paul Melville<br>Grant Thornton<br>2777 Franklin Road, Suite 800<br>Southfield, MI 48034<br>Via email paul.melville@gt.com<br>Via facsimile 248-350-3581 | Earle I. Erman<br>David H. Freedman<br>Erman Teicher Miller Zucker & Freedman PC<br>400 Galleria Officentre, Suite 444<br>Southfield, MI 48034<br>Via ECF Service<br>eerman@ermanteicher.com;<br>dfreedman@ermanteicher.com;<br>deisenberg@ermanteicher.com |

2

| | |
|---|---|
| Internal Revenue Service<br>Mail Stop 5010 CHI<br>230 South Dearborn Street, Suite 2300<br>Chicago, IL 60606<br>Via facsimile 312-566-2826 | Alexander Terras<br>Reed Smith LLP<br>10 South Wacker Drive, 40th Floor<br>Chicago, IL 60606-7507<br>Via email aterras@reedsmith.com<br>Via facsimile 312-207-6400 |
| D. Patrick Mullarkey<br>Tax Division (DOJ)<br>P.O. Box 55 Ben Franklin Station<br>Washington, DC 20044<br>Via facsimile 202-514-5238 | Internal Revenue Service<br>Centralized Insolvency Operations<br>P.O. Box 21126<br>Philadelphia, PA 19114<br>Via facsimile 215-516-2015 |
| Sarah Nye Campbell<br>Clifford Chance US LLP<br>31 West 52nd Street<br>New York, NY 10019<br>Via facsimile 212-878-8375 | Illinois Department of Revenue<br>Bankruptcy Section Level 7-425<br>Attn: Jim Newbold<br>100 West Randolph Street<br>Chicago, IL 60601<br>Via facsimile 312-814-3589 |
| Michigan Unemployment Insurance Agency<br>Tax Office – Suite 11-500<br>3024 West Grand Boulevard<br>Detroit, MI 48202-6024<br>Via overnight mail | Instituto Mexicano del Seguro Social<br>Sub Delegacion Matamoros<br>Alvaro Obregon No. 238<br>Esq. Segunda Colonia Jardin<br>Matamoros Tamaulipas CP 87330<br>Via overnight mail |
| Servicio de Administracion Tributaria<br>Administracion local de Recaudacion de Met<br>Prolongacion Calixto Ayala No. 202<br>Col. Industrial, CP 87350<br>H. Matamoros Tamaulipas<br>Via overnight mail | Michael A. Cox, Attorney General<br>Heather M. Durian, Asst. Attorney General<br>State of Michigan Department of Treasury<br>P.O. Box 30754<br>Lansing, MI 48909<br>Via ECF Service<br>durianh@michigan.gov |
| Hans-Gerd H. Jauch<br>Rechtsanwalt / Partner<br>GORG Rechtsanwalte / Insolvenzverwalter<br>Sachsenring 83, D-50677 Koln<br>Germany<br>Via email JJauch@goerg.de<br>Via facsimile 49 221 33660 85 | Secretaria De Finanzas Gobierno De<br>Tamaulipas<br>Departamento de Atencion al Contribuyente<br>Edificio Tiempo Nuevo, planta baja<br>Blvd Emilio Portes Gil No. 1260<br>Ciudad Victoria Tamaulipas<br>Via overnight mail |

3

| | |
|---|---|
| Edscha AG<br>Hohenhagener Str. 26-28<br>D42855 Remscheid<br>Germany<br>Via facsimile 49(0)2191.363-549 | Lee Industrial Contracting<br>631 Oakland Avenue<br>Pontiac, MI 48342<br>Via facsimile 248-332-9805 |
| Chizoba Egbuonu<br>Mike Maricco<br>Pension Benefit Guaranty Corporation<br>1200 K. Street NW<br>Washington, DC 2005<br>Via facsimile 202-326-4112 | Robert B. Weiss<br>E. Todd Sable<br>Daniel N. Adams<br>Honigman Miller Schwartz and Cohn LLP<br>60 Woodward Avenue, Suite 2290<br>Detroit, MI 48226<br>Via ECF Service<br>rweiss@honigman.com;<br>tsable@honigman.com; |
| William W. Thorsness<br>Vedder Price P.C.<br>222 North LaSalle Street, Suite 2600<br>Chicago, IL 60601<br>Via ECF Service<br>wthorsness@vedderprice.com | David W. Parham<br>R. Adam Swick<br>Baker & McKenzie LLP<br>2300 Trammell Crow Center<br>2001 Ross Avenue<br>Dallas, TX 75201<br>Via facsimile 214-978-3099 |
| Mark E. Abraham<br>Gould & Ratner LLP<br>222 North LaSalle Street, Eighth Floor<br>Chicago, IL 60601-1086<br>Via ECF Service<br>mabraham@gouldratner.com<br>mhannon@gouldratner.com | Bankruptcy Administration<br>IKON Financial Services<br>1738 Bass Road<br>P.O. Box 13708<br>Macon, GA 31208-3708<br>Via facsimile 678-868-2456 |
| Colleen E. McManus<br>Much Shelist Denenberg<br> Ament & Rubenstein, P.C.<br>191 North Wacker Drive, Suite 1800<br>Chicago, IL 60606<br>Via ECF Service<br>cmcmanus@muchshelist.com | Robert J. Diehl, Jr.<br>David J. Nowaczewski<br>Bodman LLP<br>6th Floor at Ford Field<br>1901 St. Antoine Street<br>Detroit, MI 48226<br>Via facsimile 313-393-7579 |
| Michael L. Pitt<br>Pitt McGehee Palmer Rivers & Golden PC<br>117 W. 4th Street<br>Suite 200<br>Royal Oak, MI 48067<br>Via facsimile 248-398-9804 | William Kent Carter<br>Clark Hill PLC<br>150 North Michigan Avenue<br>Suite 2700<br>Chicago, IL 60601<br>Via ECF Service<br>wcarter@clarkhill.com |

4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

EDSCHA NORTH AMERICA, INC. d/b/a          Case No. 09-39055
EDSCHA U.S.A., INC. and
EDSCHA JACKSON, INC.
                                          Hon.  Carol  A.  Doyle
                                          Chief Bankruptcy Judge

                    Debtor.
                                          Hearing Date: March 23, 2010
                                          Hearing Time: 10:00 a.m.

**MOTION OF THE DEBTOR TO APPROVE PRIVATE SALE OF ASSETS AND,
IN THE EVENT THE PRIVATE SALE FAILS TO CLOSE, (A) ESTABLISH SALE
PROCEDURES FOR AUCTION SALE, (B) SETTING HEARING DATES AND
(C) APPROVING FORM OF NOTICE**

NOW COMES Edscha North America, Inc., Debtor and Debtor-in-Possession

("Debtor"), by and through its attorneys, Arnstein & Lehr LLP, and in support of its

Motion to Approve Private Sale of Assets and, in the Event the Private Sale Fails to

Close, (A) Establish Sale Procedures for Auction Sale, (B) Set Hearing Dates and (C)

Approve Form of Notice, pursuant to Section 363 of the Bankruptcy Code (this "Motion"),

states respectfully as follows:

## Introduction

As discussed in greater detail below, due to, among other things, (i) the

diminishing value of the Acquired Assets (defined below) proposed to be sold pursuant

to this Motion, (ii) the existing default under the lease for the property where the

Acquired Assets are located, (iii) the Debtor's substantial and aggressive marketing

efforts for the sale of the Acquired Assets prior to the filing of this Motion, and (iv) the

proposed purchase price being higher than any other offers or proposals received by

the Debtor to date, by this Motion the Debtor is seeking two-fold, expedited relief (1)

authorizing the private sale of the Acquired Assets to Matamoros Stamping, LLC

("Matamoros") on the terms of the Asset Purchase Agreement attached to this Motion as Exhibit A (the "APA") and (2) approving the bidding procedures and sale process set forth in this Motion to sell the Acquired Assets at auction if for any reason the private sale to Matamoros does not close.

In summary, Debtor proposes the following process for the sale of the Acquired Assets:

- The Debtor will provide notice of this Motion and the proposed private sale to Matamoros to (a) the Office of the United States Trustee, (b) the Debtor's secured creditors, (c) the Committee, (d) all parties in interest requesting notice, (e) the applicable state and federal taxing authorities pursuant to Rule 2002(a) of the Federal Rules of Bankruptcy Procedure and (f) any party that has expressed an interest in purchasing the Acquired Assets during the past year;

- The Court will hold a hearing on March 23, 2010 (the "Sale Hearing") to approve (i) the private sale of the Acquired Assets to Matamoros on the terms of the APA and the proposed Sale Order attached to this Motion as Exhibit B (the "Sale Order") and (ii) the Bidding Procedures (defined below) to sell the Acquired Assets at auction if for any reason the private sale to Matamoros does not close in the form attached to this Motion as Exhibit C (the "Procedure Order");

- If the private sale to Matamoros is approved at the Sale Hearing, but Matamoros fails to close the sale of the Acquired Assets on or before April 9, 2010 or the Asset Purchase Agreement is terminated in accordance with its terms prior to closing, the Debtor will, within one (1) business day from such event, provide notice of a no-stalking-horse sale and opportunity to bid in the form attached to this Motion as Exhibit D (the "Sale Notice") as provided below, to (a) the Office of the United States Trustee, (b) the Debtor's secured creditors, (c) the Committee, (d) all parties in interest requesting notice, (e) the applicable state and federal taxing authorities pursuant to Rule 2002(a) of the Federal Rules of Bankruptcy Procedure, and (f) any party that has expressed an interest in purchasing the Acquired Assets during the past year. Without further order of the Court, the Debtor will conduct an auction for the sale of the Acquired Assets in accordance with the Bidding Procedures attached to this Motion as Exhibit E (the "Bidding Procedures") on the date that is twenty (20) business days following the date of mailing of such Sale Notice (unless such day is a holiday or a weekend, in which case the auction shall take place on the next business day), and the Court will hold a hearing to approve the sale to the winning bidder at such auction on the next business day following the auction.

## Jurisdiction

1.     This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     The statutory predicate for the relief requested in this Motion is Section 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 6004.

## Background Facts

3.     On October 19, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). On the same date, the Debtor filed its Bankruptcy Schedules and Statement of Financial Affairs.

4.     Pursuant to §§1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its financial affairs as debtor-in-possession.

5.     The Official Committee of Unsecured Creditors ("Committee") was appointed in the Chapter 11 Case on November 4, 2009. The Committee has since retained court-approved counsel to represent it in the Chapter 11 Case.

6.     Historically, the Debtor was a manufacturer and supplier of body hardware, such as hinges, checklinks, closures, and driver controls, such as hand and foot brakes, for the automotive industry.

7.     The Debtor's financing, inventory and equipment, as well as intellectual property, was supplied by its ultimate parent corporation Edscha AG, located in

3

Germany ("Edscha AG"). Due in large part to the economic instability and decline of the international automotive industry, Edscha AG itself filed for insolvency proceedings in Germany on February 2, 2009, and its insolvency case was opened with a permanent administrator appointed in May 2009.

8.      The insolvency filing by Edscha AG left the Debtor without financing that was previously available to it. Without an available source of financing, the Debtor took immediate and effective action to protect its creditors and to maintain the highest value for its assets and to operate efficiently by effecting a controlled reduction of operations including asset sales.

9.      As part of this process, the Debtor entered into an agreement (the "February Customer Agreement"), effective February 9, 2009, with Mercedes-Benz U.S. International, Ford Motor Company (Ford"), Chrysler Canada Inc., Chrysler de Mexico S.A. de C.V., Chrysler LLC, General Motors Corporation ("GM"), Volkswagen de Mexico, S.A. de C.V., Nissan North America, Inc. and Nissan Mexicana, S.A. de C.V., to provide funding for continued operations. The February Customer Agreement was in effect, with extensions, from February 9, 2009 through on or about June 30, 2009.

10.     On June 30, 2009, the Debtor ceased production of goods (the "Production Cessation Date"). Since the Production Cessation Date, the Debtor has operated its business as a lessor of equipment and licensor of intellectual property.

11.     The Debtor filed this Chapter 11 Case to pursue a controlled liquidation of its remaining assets by way of structured sales, which the Debtor believes will yield the highest and best recovery for the estate for distribution to the Debtor's creditors.

12.     The Debtor has been actively working with the Committee, since its

4

appointment, in an attempt to proceed with asset recovery and liquidation, claim review and classification and completion of the liquidating plan terms and conditions.

### Relief Requested

13.    Pursuant to this Motion, the Debtor is seeking two-fold, expedited relief: (1) authorizing the private sale of the Acquired Assets to Matamoros on the terms of the APA in consideration for the payment of $1,800,000 ("Purchase Price") and (2) approving the bidding procedures and sale process set forth in this Motion to sell the Acquired Assets at auction if for any reason the private sale to Matamoros does not close.

### The Proposed Sale

14.    The Debtor has received an offer from Matamoros (the "Matamoros Offer") pursuant to the APA, to purchase certain of the Debtor's assets listed on Schedule 2.1 to the APA, which schedule remains in process but will consist of all assets owned by the Debtor and located in the Matamoros, Mexico facility (the "Acquired Assets").   A good faith deposit in the amount of $180,000 (10% of the Purchase Price) has been funded by Matamoros, which the Debtor is currently holding in an escrow account.

15.    The Debtor has determined, after substantial and aggressive marketing of the Acquired Assets and in its business judgment, that the Matamoros Offer is the highest and best offer available for the Acquired Assets and, therefore, has requested authorization to consummate a private sale to Matamoros.   Notwithstanding the Debtor's request for authorization to conduct a private sale, the Matamoros Offer will be subject to the approval of this Court.

16.    Matamoros is unrelated to the Debtor.

17.    The Matamoros Offer can be summarized as follows:

i.   Matamoros is purchasing all of the estate's right, title and interest in and to the Acquired Assets as that term is defined in the attached APA;

ii.  The Purchase Price for the Acquired Assets is $1,800,000 with a deposit of 10% of the Purchase Price held by the Debtor in escrow;

iii. Sixteen Percent (16%) of the sales proceeds will be escrowed to fund the payment of any tax liabilities, if necessary, resulting from the sale of the Acquired Assets pursuant to the terms of Paragraph 2.3 of the APA;

iv.  The Acquired Assets shall be delivered to Matamoros at the closing of the private sale, and the title and risk of loss to the Acquired Assets shall pass to the Matamoros at the closing. Matamoros shall be responsible for all disassembly, freight, duty and removal charges, which shall take place on or before April 15, 2010, unless Matamoros provides written evidence to the Debtor that it has entered into a separate agreement with the landlord of the facility holding the Acquired Assets, which permits Matamoros' occupancy of the premises after that date. Matamoros is responsible for all rent, utilities and other occupancy charges after closing of the private sale; and

v.   The closing of the private sale is conditioned upon the entry of a final order approving the sale of the Acquired Assets free and clear of all liens, claims and encumbrances.

18.   Without further notice, marketing or an opportunity for bidding, the Debtor requests this Court's approval of the sale of the Acquired Assets to Matamoros as a private sale for the following reasons:

a)   The Acquired Assets have been substantially and aggressively marketed both pre and post-petition and the offer of Matamoros represents, at this time, consideration to the estate which is higher than any other proposals received by the Debtor.

b)   The Acquired Assets are located in Matamoros, Mexico in a facility leased by the Debtor from a third party. The Debtor is in default under the lease and the Debtor's continued access to the facility is uncertain. The Acquired Assets consist of large presses, which if purchased by any other party, would require an extended period and a significant expense to remove from the leased facility. Although not a requirement of the sale, Matamoros has advised the Debtor of its intention to leave the Acquired Assets in place and enter into separate arrangements with the landlord at Matamoros' sole expense.

c)     The costs and risks associated with continuing to maintain and secure the Acquired Assets are substantial.

19.    If for any reason the sale of the Acquired Assets to Matamoros does not close, the Debtor requests that the Court approve the Bidding Procedures under which an auction of the Acquired Assets may proceed expeditiously and without further order of this Court.   The Debtor believes that the terms of the Bidding Procedures are reasonable, consistent with transactions of the type contemplated in this Motion, and will ensure that the estate realizes the maximum possible value for the Acquired Assets in the event the sale to Matamoros does not close.

## Bidding, Sale and Auction Procedures

20.    The Debtor seeks the entry of the Procedure Order approving the Bidding Procedures to be used in connection with the auction and sale of the Acquired Assets and the scheduling of a hearing to approve the sale to the successful bidder at the auction in the event the private sale to Matamoros does not close. The Bidding Procedures are as follows:

### Bidding Procedures

A.    The Bidding Procedures set forth herein shall be incorporated into the Notice of Sale and Opportunity to Bid respecting the auction (the "**Sale Notice**") and the Debtor's counsel shall serve the Sale Notice, along with the Bidding Procedures, upon (a) the Office of the United States Trustee, (b) the Debtor's secured creditors, (c) the Committee, (d) all parties in interest requesting notice, (e) the applicable state and federal taxing authorities pursuant to Rule 2002(a) of the Federal Rules of Bankruptcy Procedure, and (f) any party that has expressed an interest in purchasing the Acquired Assets during the past year.  Subsequent to the service of the Sale Notice, the Debtor will provide the Sale Notice to any party requesting in writing a copy of same.

B.    Unless otherwise ordered by the Court for cause shown, in order to participate in the bidding process, each person (a "**Potential Bidder**") must deliver to the Debtor on or before 5:00 p.m. on the last business day before the auction (the "**Bid Deadline**"): (i) such information as the Debtor shall request establishing a Potential

Bidder's ability to consummate a sales transaction in a timely manner, specifically including demonstration of financial wherewithal; (ii) a cashier's or certified check in the amount of $_____ (the "**Participation Deposit**"); (iii) an executed asset purchase agreement in substantially the form of the APA and (iv) a copy of the proposed asset purchase agreement marked against the APA to show all changes. Any party qualifying under all of the above standards shall be entitled to bid to purchase the Acquired Assets and will be referred to hereinafter as a "**Qualified Bidder**." Any bid made by a Qualified Bidder shall be referred to as a "**Qualified Bid**."

C.    The Debtor will grant reasonable and prompt access to the Acquired Assets to any Potential Bidder expressing an interest in viewing the same for the purpose of making a bid thereupon.

D.    The Debtor will offer the Acquired Assets for sale at an auction in conformity with the Procedure Order and Bidding Procedures on the date that is twenty (20) business days following the date of mailing of the Sale Notice (unless such day is a holiday or a weekend, in which case the auction shall take place on the next business day), commencing at 10:00 a.m. at the offices of counsel for the Debtor, Arnstein & Lehr LLP, 120 S. Riverside Plaza, Suite 1200, Chicago, IL 60606-3910. The Debtor shall conduct the auction unless (i) no competing bid is submitted by the Competing Bid Deadline; or (ii) Debtor and the Committee agree to extend the Competing Bid Deadline. Only Qualified Bidders may participate in the auction. Any Qualified Bidder or its counsel of record wishing to participate in the Auction shall (1) be present in person and (2) sign the "Official Sign-In Sheet" acknowledging their interest in participating and their familiarity with and acceptance of all of the Bid Procedures. Bidding among Qualified Bidders will proceed in increments of $50,000. At the conclusion of the auction, the Debtor, in consultation with the Committee, will engage in an analysis (the "**Bid Analysis**") to determine which qualified bid is, in the Debtor's and Committee's respective best judgment, the highest, or otherwise best offer (or offers, if the Acquired Assets are sold in separate lots) (the "**Winning Bid**").

E.    At the conclusion of the Bid Analysis, the Debtor shall close the auction and declare the bidder that submitted the Winning Bid as the "**Successful Purchaser**" subject only to approval of the Court and the entry of the Sale Order. A hearing will be held seeking entry of the Sale Order authorizing the Debtor to consummate the sale for the Winning Bid with the Successful Purchaser on the next business day following the auction at 10:00 a.m. in Courtroom 742 at the United States Bankruptcy Court, 219 S. Dearborn Street,

Chicago, Illinois, 60604 (the "**Sale Hearing**").

F.   In the event that a Successful Purchaser (as that term is defined below) defaults in the performance of its obligations to purchase all or a portion of the Acquired Assets pursuant to a Winning Bid, the Participation Deposit of the Successful Purchaser shall be forfeited. Any party making a Participation Deposit, who does not become the Successful Purchaser shall be deemed to have its bid remain open until the closing of the sale to the Successful Purchaser and shall have its Participation Deposit returned to it by the Debtor within two (2) business days after the closing.

G.   In the event that a Successful Purchaser defaults in the performance of its Winning Bid, then the next highest bidder for the Acquired Assets may be invited by the Debtor to proceed as the Successful Purchaser, and if that entity elects to so proceed, then its bid will be treated as the Winning Bid without further order of the Court.

H.   Any sale hereunder shall be free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances attaching to the proceeds of the sale in the same rank and priority as they enjoyed prior to the Auction in accordance with applicable law.

I.   The closing of any sale hereunder shall occur as soon as practicable after the Sale Hearing, but in no event later than three (3) business days after the Sale Hearing, at the offices of counsel for the Committee.   Any sale hereunder shall be final, and the Successful Purchaser shall pay at the closing of such sale the amount of the Winning Bid less the Participation Deposit in immediately available funds.

J.   The sale of any of the Acquired Assets shall be on "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, this bankruptcy estate, or the Debtor's agents except for those set forth in the APA.  By submitting a bid, each Qualified Bidder shall be deemed to have acknowledged and represented that (i) it has had an opportunity to inspect and examine the Acquired Assets and to conduct due diligence regarding the Acquired Assets prior to making its offer; (ii) it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid; and (iii) it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets by any entity whatsoever, or the

completeness of any information provided in connection therewith or the auction, except as expressly stated in these Bidding Procedures or, as to the Winning Bidder, the applicable purchase agreement.

## Sale Hearing

A.    At the Sale Hearing, the Debtor shall present the Winning Bid to the Court and seek the entry of the Sale Order containing all approvals and authorizations that, in the Debtor's judgment, are necessary to effectuate and consummate the transactions set forth in the Winning Bid and to provide the Debtor's bankruptcy estate with the benefits thereof.

B.    Notwithstanding anything to the contrary in the Motion or the APA, a Winning Bid shall have been deemed accepted by the Debtor only upon entry of the Sale Order and the Debtor will not be obligated to take any action related to the sale of the Acquired Assets unless and until the Court enters the Sale Order. The Debtor's presentation to the Court for approval of the Winning Bid does not constitute the Debtor's acceptance thereof until entry of such the Sale Order.

21.    The Debtor further seeks approval of the Sale Notice. The Debtor proposes to publish the Sale Notice, without the Bidding Procedures, in the Chicago Tribune. The Debtor proposes to serve the Sale Notice, along with the Bidding Procedures, upon ((a) the Office of the United States Trustee, (b) the Debtor's secured creditors, (c) the Committee, (d) all parties in interest requesting notice, (e) the applicable state and federal taxing authorities pursuant to Rule 2002(a) of the Federal Rules of Bankruptcy Procedure, and (f) any party that has expressed an interest in purchasing the Acquired Assets during the past year. The Sale Notice is appropriate for purposes of selling the Acquired Assets free and clear of liens under 11 U.S.C. § 363 under the circumstances described herein.

## The Sale is Supported by the Debtor's Reasonable Business Judgment

22.    The Debtor believes a prompt sale of the Acquired Assets, pursuant to §363(b) of the Bankruptcy Code, to Matamoros or, in the event Matamoros fails to close the sale of the Acquired Assets, to another purchaser who through the auction process

provides the highest and best offer and most viable option available to the Debtor's estate to maximize value of the Acquired Assets.

23.    The Debtor is concerned that: (a) the value of the Acquired Assets is deteriorating and may deteriorate further if the proposed sale process is delayed, and (b) expenses and risks relating to the maintenance and security of the Acquired Assets in a foreign jurisdiction are increasing. These concerns are shared by the Committee.

24.    Entry of an order approving the private sale of the Acquired Assets to Matamoros, or, if applicable, to the highest and best bidder at the conclusion of the auction sale, is authorized and appropriate under the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate."

25.    This Court's power to authorize a sale under 11 U.S.C. § 363(b) of the Bankruptcy Code is to be exercised at its discretion, utilizing a flexible, case by case approach. In re Baldwin United Corp., 43 B.R. 905 (Bankr. S.D. Ohio 1984). The key consideration is this Court's finding that a good business reason exists for the sale. In re Schipper, 933 F.2d 513 (7th Cir. 1991); Stephens Industries, Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986). As noted in In re Walter, 83 B.R. 14, 1-20 (9th Cir. BAP 1988), citing In re Lionel Corporation, 722 F.2e 1063, 1070-71 (2nd Cir. 1983):

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.... Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the Debtors, creditors and equity holders alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plan of

reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

26.    Several sound business reasons exist for selling the Acquired Assets at this time:

a)    The prompt sale to Matamoros is in the best interests of the estate for the reasons set forth at paragraph 17 above.

b)    In the event the sale to Matamoros fails to close,

(i)    the alternative auction procedures for sale of the Acquired Assets provide potential bidders an opportunity to determine a reasonable price at which they would be interested in purchasing the Acquired Assets;

(ii)    the proposed Bidding Procedures will allow the highest bidder to purchase the Acquired Assets, thereby maximizing the return to the estate; and

(iii)    any possible competing bidder will have the opportunity to bid at the auction (assuming it becomes a Qualified Bidder), thus ensuring that the purchase of the Acquired Assets will be effected through an arms-length transaction.

24.    The Debtor submits that the sale to Matamoros approximates at least fair market value for the Acquired Assets and, in the event the sale of the Acquired Assets to Matamoros fails for any reason, the proposed Bidding Procedures are reasonable and necessary for sales of this size and are properly calculated to maximize the value of the Acquired Assets for the estate.

25.    The Debtor requests that the order approving the sale of the Acquired Assests, whether through the private sale to Matamoros or by auction, provide that the

12

Successful Purchaser has acquired the Acquired Assets in good faith. Pursuant to Section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. 11 U.S.C. §363(m). In this case, since adequate notice has been provided, the Successful Purchaser shall be entitled to all the protections afforded it under §363(m) of the Bankruptcy Code.

26.    There will be insufficient proceeds from the sale of the Acquired Assets to satisfy any claims by the Lenders. However, to the extent the Lenders have claims in and to the Acquired Assets, those claims will be protected by the transfer of any and all liens to the proceeds of sale to the same extent and with the same validity and priority as existed on the Petition Date.

27.    The Debtor believes that the procedures the sale of the Acquired Assets are in the best interests of the estate, creditors and other interested parties and will facilitate and expedite the sale process and maximize the going concern value of the Acquired Assets for the benefit of all creditors in this case.

### Notice

28.    Twenty days notice of Motion has been given to: (a) the Office of the United States Trustee, (b) the Debtor's secured creditors, (c) the Committee, (d) all parties in interest requesting notice, (e) the applicable state and federal taxing authorities pursuant to Rule 2002(a) of the Federal Rules of Bankruptcy Procedure and (f) any party that has expressed an interest in purchasing the Acquired Assets during the past year. In light of the foregoing, the Debtor requests that no further notice is required.

WHEREFORE, for the foregoing reasons, the Debtor prays for the entry of Orders:

A.   Approving the terms of the APA entered into between the Debtor and Matamoros and authorizing the sale of the Acquired Assets to Matamoros in accordance with the terms of the APA without further order of court;

B.   Approving the Bidding Procedures set forth herein;

C.   Setting a date for an auction sale and a Sale Hearing in the event the sale of the Acquired Assets to Matamoros does not timely close for any reason;

D.   Setting a date by which any objections to the proposed auction sale must be filed;

E.   Approving the form of Sale Notice relating to the possible auction sale proposed and the manner of notice to be given to creditors and interested parties;

F.   Providing that the Bankruptcy Court shall retain jurisdiction for the purpose of enforcing the provisions of the Sale Order;

G.   Determining that the Successful Purchaser has acted in "good faith" as that term is defined in 11 U.S.C. §363(m);

H.   Finding that the sale of the Acquired Assets is in the best interests of the Debtor's bankruptcy estate, and the Debtor has exercised its sound business judgment in the sale of the Acquired Assets to the Successful Purchaser;

I.   Providing that the ten (10) day stay provided in Federal Rule of Bankruptcy Procedure 6004 shall be waived, and there will be no stay of execution of the Sale Order so that the Successful Purchaser and the Debtor are authorized to close the sale immediately upon this Court's entry of the Sale Order;

J.   Finding that due and adequate notice has been given to all necessary parties;

K.   Finding that the terms of the Sale Order shall be binding if the Chapter 11 Case is converted or a trustee is subsequently appointed; and

L.   Granting such other and further relief as the Court deems just and proper.

14

**EDSCHA NORTH AMERICA, INC d/b/a
EDSCHA U.S.A, INC. and EDSCHA
JACKSON INC.**

**/s/  Michael Gesas**
One of its Attorneys

Michael L. Gesas, Esq. (#06186924)
Michelle G. Novick, Esq. (#06207045)
ARNSTEIN & LEHR LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
Phone: (312) 876-7100
Fax: (312) 876- 0288
E-mail: mlgesas@arnstein.com
E-mail: mgnovick@arnstein.com

DETROIT.4061154.6