**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| EQUIPMENT ACQUISITION RESOURCES, INC., | Case No. 09 B 39937 |
| Debtor. | Hon. John H. Squires |

**PLAN OF LIQUIDATION OF**
**EQUIPMENT ACQUISITION RESOURCES, INC.**
**DATED MARCH 19, 2010**

Barry A. Chatz
Miriam R. Stein
Kevin H. Morse
ARNSTEIN & LEHR LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
(312) 876-7100

ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION

8858704.1

## INTRODUCTION

Equipment Acquisition Resources, Inc. ("Debtor" or "EAR") proposes the following Plan of Liquidation pursuant to the provisions of Chapter 11 of the Bankruptcy Code. Reference is made to the Disclosure Statement (as that term is defined herein), for a discussion of the Debtor's history, business and operations, risk factors, and certain related matters. The Disclosure Statement also provides a summary of this Plan of Liquidation.

Prior to the commencement of this case, the Debtor purported to be a market maker in the semiconductor manufacturing equipment sales and servicing industry. Prior to the Petition Date, it became clear that the Debtor may have engaged in fraudulent activity with respect to its operations and financial reporting. In October 2009, the members of the Debtor's board of directors and its officers resigned and the shareholders elected the CRO as the sole member of the board of directors and the Debtor's chief restructuring officer.

On December 10, 2009, the Bankruptcy Court entered an order granting the Debtor authority to abandon property of the estate ("Abandonment Order"). Pursuant to the Abandonment Order, the Debtor was authorized to and did in fact abandon all of its ownership and leasehold interests in the Abandoned Equipment, the Abandoned Real Property and the Abandoned Leased Warehouses (collectively, the "Abandoned Property"), and surrendered its ownership to all parties with claimed interests in such property. The Abandonment Order also granted all equipment lessors and secured lenders asserting an interest in such abandoned property relief from the automatic stay effective December 31, 2009 to proceed with their respective rights under applicable law.

This Plan provides (1) the Secured Claims not otherwise satisfied by the abandonment of the property to the holders of the Secured Claims, shall hold deficiency claims against the Debtor; and (2) all the remaining assets of the Debtor, not previously abandoned, shall vest in a Creditor Trust to be liquidated for the benefit of administrative, priority unsecured and all other unsecured creditors, including deficiency claims.

## ARTICLE I

### DEFINED TERMS AND RULES OF INTERPRETATION

Defined Terms: As used herein, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    Abandoned Equipment means the semiconductor manufacturing equipment and other equipment and parts owned and/or leased by the Debtor that were abandoned by the Debtor pursuant to the Abandonment Order.

1.2    Abandoned Leased Warehouses mean the various Illinois warehouses and storage facilities used to store the Abandoned Equipment, located at: 601 S. Vermont Street, Palatine, Illinois, 629 S. Vermont Street, Palatine, Illinois, 645 S. Vermont Street, Palatine, Illinois and 649 S. Vermont Street, Palatine, Illinois; which were abandoned by the Debtor pursuant to the Abandonment Order.

1.3    Abandoned Property means collectively, the Abandoned Equipment, Abandoned Leased Warehouses and Abandoned Real Property.

1.4    Abandoned Real Property means the Debtor's business office, warehouse and storage facility located at 555 W. Vermont Street, Palatine, Illinois and 3280 North California Avenue, Chicago, Illinois, that were abandoned by the Debtor pursuant to the Abandonment Order.

1.5    Abandonment Order -- means the Order entered by the Bankruptcy Court on December 10, 2009, granting the Debtor's request to abandon all of the Debtor's interest in all real property or equipment.

1.6    Administrative Claim -- means a Claim for costs and expenses of administration of the Chapter 11 case Allowed under sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and winding down the business of the Debtor (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 330, 331 or 503(b) of the Bankruptcy Code (also defined herein as "Fee Claims") to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Debtor's Estate under section 1930, chapter 123 of title 28, United States Code.

1.7    Allowed -- means an Allowed Claim or Interest in a particular Class or category specified. Any reference herein to a particular Allowed Claim includes both the secured and unsecured portions of such Claim.

1.8    Allowed Claim -- means a Claim: (a) as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; or (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by a Final Order; (ii) by an agreement between the Holder of such

Claim and the Debtor or the Creditor Trust, as the case may be; or (iii) pursuant to the terms of this Plan.

1.8.1.  For purposes of computing distributions under this Plan, the term "Allowed Claim" shall not include interest on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.

1.9    Avoidance Action – means any cause of action against persons or entities arising under sections 502, 510, 541, 542, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced before or after the Effective Date to prosecute such Avoidance Actions.

1.10    Bankruptcy Case -- means Case No. 09 B 39937, the Chapter 11 case of the Debtor filed October 23, 2009.

1.11    Bankruptcy Code -- means title 11 of the United States Code (11 U.S.C. §§ 101 *et. seq.*), as now in effect or hereafter amended.

1.12    Bankruptcy Court -- means the United States Bankruptcy Court for the Northern District of Illinois having jurisdiction over the Bankruptcy Case.

1.13    Bankruptcy Rules -- means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.14    Business Day -- means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

1.15    Cash -- means legal tender of the United States of America and equivalents thereof.

1.16    Claim -- means a "claim," as defined in section 101(5) of the Bankruptcy Code.

1.17    Claims Objection Deadline -- means, the last day for Filing objections to Claims or Interests which date shall be the date 60 days after the Effective Date.

1.18    Class -- means a category of holders of Claims or Interests, as described in Article II hereof.

1.19    Confirmation Date -- means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.20    Confirmation Hearing -- means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.21    Confirmation Order -- means the order of the Bankruptcy Court, confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.22    Creditors -- means all creditors of the Debtor holding Claims for debts, liabilities, demands or other Claims of any character whatsoever.

1.23    Creditor Trust -- means a common law trust to be established pursuant to the Plan and the Creditor Trust Agreement.

1.24    Creditor Trust Agreement -- means the document attached hereto as **Exhibit A** that effectuates and establishes the Creditor Trust and the terms by which all of the Creditor Trust Assets will vest with the Creditor Trust upon the Effective Date of the Plan for the benefit of all creditors of the Debtor, including for payment of Allowed Administrative Claims, Allowed Priority Claims and Allowed General Unsecured Claims. The Creditor Trust shall liquidate and distribute the Creditor Trust Assets in accordance with the terms of the Plan and Creditor Trust Agreement.

1.25    Creditor Trust Assets -- means those assets to be transferred to and vested in the Creditor Trust pursuant to this Plan, plus all proceeds, earnings and replacements arising from or relating to these assets and all assets acquired by the Creditor Trust at any time.  The Creditor Trust Assets shall include all assets of the Debtor not abandoned pursuant to the Abandonment Order, including without limitation, cash and all Litigation Claims.

1.26    Creditor Trustee -- means William A. Brandt, Jr. of Development Specialists, Inc., to serve as custodian for the Creditor Trust and to oversee the liquidation and distribution of the Creditor Trust Assets held therein.

1.27    CRO -- means William A. Brandt, Jr. of Development Specialists, Inc., the chief restructuring officer of the Debtor.

1.28    Debtor -- means Equipment Acquisition Resources, Inc.

1.29    DIP -- means debtor in possession.

1.30    Disbursing Agent -- means the Creditor Trustee, as that term is defined above, or any successor person or entity that may be designated by the Creditor Trust to serve as Creditor Trustee under the Plan.

1.31    Disclosure Statement -- means that certain disclosure statement, including all exhibits and schedules thereto, as further amended or supplemented from time to time, relating to this Plan as approved by order of the Bankruptcy Court.

1.32   Disputed Claim -- means any Claim as to which the Debtor or Creditor Trust have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any claim otherwise disputed by the Debtor in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

1.33   Disputed Claim Amount -- means (a) with respect to contingent or unliquidated Claims, the amount estimated by the Bankruptcy Court for purposes of distributions in respect of such Claim in accordance with section 502(c) of the Bankruptcy Code; or (b) the amount set forth in a timely Filed proof of claim.

1.34   Effective Date -- means the date when the Confirmation Order becomes a Final Order.

1.35   Employee Claims -- means a Claim (or a portion of a Claim) held by an employee of the Debtor for unpaid wages and/or expenses relating to such employee's employment at the Debtor which is entitled to priority under section 507 of the Bankruptcy Code.

1.36   Estate -- means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.37   Fee Claim -- means an Administrative Claim arising or asserted under section 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Bankruptcy Case on or prior to the Effective Date.

1.38   File, Filed or Filing -- means file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Case.

1.39   Final Order -- means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or the Creditor Trust or, in the event that an appeal, writ of certiorari or re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, re-argument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

1.40    General Unsecured Claim -- means any Unsecured Claim, arising prior to the Effective Date, that is not a claim that falls within Class 1 (Secured Claims); Class 2 (Unsecured Priority Employee Claims); and Class 4 (Equity Interest Holder Claims)

1.41    Holder --means an entity holding a Claim or Interest.

1.42    Initial Distribution Date – means the date declared by the Creditor Trustee for initial distributions on Allowed Claims, as further set forth in the Plan.

1.43    Impaired -- means, in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.44    Interest -- means the legal, equitable, contractual and other rights of the holders of any stock rights, whether preferred or common, pertaining or relating in any way to the Debtor.

1.45    IRS -- means the Internal Revenue Service.

1.46    Litigation Claims -- means the Claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or Estate may hold against any person or entity under the Bankruptcy Code or any non-bankruptcy law, including, but not limited to, Avoidance Actions, Claims, rights of action, suits or proceedings against "insiders" of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code.

1.47    Net Available Cash -- means all of the cash available to the Debtor less cash necessary to satisfy administrative claims.

1.48    Owners -- means shareholders of the Debtor and holders of Class 7 claims.

1.49    Petition Date -- means October 23, 2009, the date on which the Debtor filed its petition for relief commencing the Bankruptcy Case.

1.50    Plan -- means this Plan of Liquidation and all supplements, appendices and schedules hereto, in its present form or as the same may be altered, amended or modified from time to time.

1.51    Priority Claim -- means a Claim, other than an Administrative Claim, Employee Claim or Priority Tax Claim, that is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.52    Priority Tax Claims -- means the Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.53    Professional -- means any (a) professional employed in the Debtor's Chapter 11 case pursuant to section 327 or 1103 of the Bankruptcy Code or otherwise and (b) other professional or other entity seeking compensation or reimbursement of expenses in connection with the Debtor's Chapter 11 case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.54    Secured Claim -- means a Claim of a Creditor secured by a lien on property of the Estate, or a Claim subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in property of the Estate, or to the extent of the amount subject to setoff, as the case may be.

1.55    Secured Creditor -- means the Holder of a Secured Claim.

1.56    Trustee Expenses -- means the reasonable fees, costs and expenses incurred by the Creditor Trustee and any professionals retained by the Creditor Trustee in connection with the performance of his duties and responsibilities under the Plan, as well as any other reasonably and necessary costs of administration of the Creditor Trust, including U.S. Trustee fees incurred after the Effective Date of the Plan.

1.57    Unimpaired Claim -- means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.58    Unsecured Claim -- means a Claim of a Creditor not secured by a lien on property of the Estate and not entitled to be classified as a priority claim pursuant to section 507 of the Bankruptcy Code.

1.59    Unsecured Insider Claim -- means a Claim of a Creditor not secured by a lien on property of the Estate and not entitled to be classified as a priority claim pursuant to section 507 of the Bankruptcy Code that is asserted by an "insider" of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code.

1.60    U.S. Trustee -- means the Office of the United States Trustee.

1.61    Rules of Interpretation and Computation of Time. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural. will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than

to a particular portion of this Plan; (g) captions and, headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 1021 of the Bankruptcy Code will apply; and (i) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims (including Fee Claims), are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Fee Claims and Administrative Claims as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

2.1    Unclassified Claims (not entitled to vote on the Plan).

    a.  Fee Claims and United States Trustee Fees.

    b.  Other Administrative Claims.

2.2    Unimpaired Classes of Claims (not entitled to Vote on the Plan)

    a.  Class 1. Employee Claims.

    b.  Class 2. Secured Claims.

2.3    Impaired Classes of Claim (entitled to Vote on the Plan)

    a.  Class 3. Allowed General Unsecured Claims.

2.4    Impaired Classes of Interests (not entitled to Vote on the Plan)

    a.  Class 4.  Interests of Equity Security Holders

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

3.1    Unclassified Fees

3.1.1.  Fee Claims and U.S. Trustee Fees

Fee Claims shall be paid in full, in cash, on or before the earlier of the Effective Date or upon approval by the Bankruptcy Court of such Fee Claims, or on such other terms as agreed upon between the Debtor and the Professional asserting the Fee Claim.  Statutory fees owed to the U.S. Trustee shall be paid in full on or before the Effective Date and shall be paid on a regular basis thereafter as incurred until the Bankruptcy Case is closed.

3.1.2.  Other Administrative Claims.

All other Administrative Claims not included in 3.1.1 above, shall be paid by the Creditor Trustee, at its election: (a) in full, in cash, in such amounts as are incurred in the ordinary course of business by the Creditor Trust, or in such amounts as the Bankruptcy Court may allow upon the later of the Effective Date or the date upon which there is a Final Order allowing such Administrative Claim; (b) upon such other terms as may exist in the ordinary course of the Debtor's business; or (c) upon such other terms as may be agreed upon between the Holder of such Administrative Claim and the Creditor Trust.

3.2    Unimpaired Classes of Claims. (Not Entitled to Vote on Plan)

3.2.1.  Class 1.  Employee Claims.

To the extent there are sufficient Creditor Trust Assets after payment in full of all Allowed Administrative Claims, the Creditor Trustee shall distribute Cash proceeds of the Creditor Trust Assets on a pro rata basis to holders of Allowed Employee Claims to the extent of $10,950 for each individual employee on the Initial Distribution Date, and on each Distribution Date thereafter until all employee claims are paid in full.

Class 1 is Unimpaired and not entitled to vote on the Plan.

3.2.2.  Class 2.  Secured Claims

Due to the Abandonment Order, there are no Secured Claims against the Debtor. To the extent any Secured Creditors assert a deficiency claim relating to the Abandoned Property, such deficiency claim shall be treated as a General Unsecured Claim.

Class 2 in Unimpaired and not entitled to vote on the Plan.

3.3    Impaired Classes of Claims. (Entitled to Vote on Plan)

3.3.1.  Class 3.  General Unsecured Claims

(a)    To the extent that there are sufficient Creditor Trust Assets, after payment in full of all Allowed Administrative and Priority Claims, the Creditor Trust Trustee shall distribute the Cash proceeds of the remaining Creditor Trust Assets to holders of Allowed Class 3 Claims on a pro rata basis.

(b)    The remaining assets of the Debtor shall vest with the Creditor Trust on the Effective Date of the Plan.  Thereafter, the Creditor Trustee shall make distributions from the Creditor Trust on the Initial Distribution Date and on any Distribution thereafter in his sole discretion.

Class 3 is Impaired and entitled to vote on the Plan.

3.4    Impaired Classes to Claims (Not Entitled to Vote on Plan)

3.4.1.  Class 4.  Interests.

Holders of Interests in the Debtor which were incurred prior to the Petition Date shall not retain their Interests as of the Effective Date.  Class 4 shall not receive a Distribution under this Plan and Class 4 is not entitled to vote on the Plan.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1    Vesting of Assets in the Creditor Trust for Purpose of Distribution.  On the Effective Date of the Plan, all assets of the Debtor and its Estate not previously abandoned pursuant to the Abandonment Order, shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan and Creditor Trust Agreement.  The Creditor Trust Assets include, without limitation, all cash in the possession of the Debtor (or its agents), all Avoidance Actions, Litigation Claims, causes of action on behalf of the Debtor seeking recovery of the Debtor's accounts receivable, all rights of the Debtor under the Plan, the Confirmation Order, and all other orders entered by the Bankruptcy Court in this Chapter 11 Case on or prior to the Effective Date, and all books and records related to the Estate.

4.2    Creditor Trust Asset Administration.  The Creditor Trustee shall administer the Creditor Trust Assets pursuant to the Plan and Creditor Trust Agreement from and after the Effective Date.  The Creditor Trustee shall be responsible for liquidating the Creditor Trust Assets, analyzing and reconciling Claims (including pursuing objections to Claims as required), pursuing Avoidance Actions and Litigation Claims, making

distributions of the Net Available Cash to the beneficiaries of the Creditor Trust, and all other activities typically related to trust administration.

4.3     Sources of Net Available Cash for Creditor Trustee Distributions.  Except as otherwise provided in the Plan, Creditor Trust Agreement or the Confirmation Order, all Cash necessary for the Creditor Trust to make payments pursuant to the Plan and Creditor Trust Agreement shall be obtained from existing Cash balances, collection of the accounts receivable of the Debtor and liquidation of the Creditor Trust Assets. Specifically, the Debtor or the Creditor Trust, as the case may be, shall take the following steps to liquidate the Debtor's scheduled assets:

>    4.3.1  Liquidate non abandoned assets;

>    4.3.2  Continue to analyze, prosecute and/or negotiate all adversary cases pending in the Bankruptcy Case;

>    4.3.3  Take all appropriate action to analyze, prosecute and/or negotiate all Litigation Claims including Avoidance Actions, Claims, rights of action, suits or proceedings against "insiders" of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code;

>    4.3.4  Investigate and liquidate any potential tax recoveries; and

>    4.3.5  Liquidate any other Creditor Trust Assets of value.

4.4     Chapter 11 Case Administration.  From and after the Effective Date and continuing through the date that a final decree closing the Bankruptcy Case is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Creditor Trustee shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Bankruptcy Case.  In addition to the foregoing, for all matters arising in, arising under or related to the Bankruptcy Case, the Creditor Trustee shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction, (ii) have the right to obtain records of, or related to, the Debtor (including, without limitation, cancelled checks, bank statements and lists of lessors), (iii) be entitled to notice and opportunity for hearing, (iv) be entitled to participate in all matters brought before the Bankruptcy Court, (v) be entitled to request the Bankruptcy Court to enter a final decree closing this Bankruptcy Case, and (vi) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in this Bankruptcy Case.

4.5     Creditor Trustee's Professionals.  Upon the Effective Date, the Creditor Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers or other Professionals as the Creditor Trustee may deem necessary, in his or her sole discretion, to aid in the performance of the Creditor Trustee's responsibilities pursuant to this Plan.  The Professionals retained by

the Creditor Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in the Bankruptcy Case, and the Creditor Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity of Professionals.

4.6    Dissolution of the Debtor.  Promptly after completing its wind-down, the Creditor Trustee will allow the Secretary of State to involuntarily dissolve the Debtor. The Creditor Trustee shall thereafter have standing to assert claims or pursue matters on behalf of the Debtor to the extent necessary to preserve and protect the Creditor Trust Assets or otherwise necessary to administer the Creditor Trust.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

5.1    Classes Entitled to Vote.  Classes 1 and 2 are deemed unimpaired and not entitled to vote to accept or reject the Plan.  Allowed Class 3 Claims are impaired and entitled to vote to accept or reject the Plan.  Class 4 will not receive or retain any distribution under the Plan and is conclusively presumed to reject the Plan under section 1126(g) of the Bankruptcy Code.

5.2    Cramdown.  The Plan contains only one (1) class of Claims eligible to vote.  As such, the Debtor cannot seek confirmation by "cramdown" under section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1    Distributions for Claims or Interests Allowed as of the Effective Date. Except as otherwise provided herein, in the Creditor Trust Agreement or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made from time to time on dates determined by the Creditor Trustee.  Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions on account of Claims or Interests that first become Allowed Claims or Interests after the Effective Date shall be made pursuant to Articles III, VI and VIII of this Plan.

6.2    Interest on Claims. Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of any other Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.  This provision does not apply to the United States or the Internal Revenue Service.

6.3     Distributions by Creditor Trust. Except as otherwise provided below, the Creditor Trust shall make all distributions required to be distributed under the Plan and Creditor Trust Agreement.

6.4     Delivery of Distributions and Undeliverable or Unclaimed Distributions.

6.4.1. Delivery of Distributions in General. Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Debtor's records unless proofs of claim or transfers of claim filed pursuant to the Bankruptcy Rules supersede such addresses.

6.4.2.  Undeliverable and Unclaimed Distributions.

6.4.2.1.   Holding and Investment of Undeliverable and Unclaimed Distributions. If the distribution to any Holder of an Allowed Claim or Interest is returned to the Creditor Trust as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Creditor Trust is notified in writing of such Holder's then current address.  If the Distribution is unclaimed for three (3) months, the funds revert back to the Creditor Trust for redistribution.  This provision does not apply to the United States or the Internal Revenue Service.

6.4.2.2.   After Distributions Become Deliverable. The Creditor Trust shall make all distributions that have become deliverable or have been claimed since the Effective Date as soon as practicable after such distribution has become deliverable.

6.4.2.3.   Failure to Claim Undeliverable Distributions. Any Holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed distribution within three (3) months after distribution shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting and such claim for an undeliverable or unclaimed distribution against the Debtor or its Estate, Creditor Trust or its property. In such cases, any Cash for distribution on account of such claims for undeliverable or unclaimed distributions shall become the property of the Creditor Trust, for redistribution, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary. This provision does not apply to the United States or the Internal Revenue Service.

6.5     Compliance with Tax Requirements. Any federal, state or local withholding taxes or amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All entities holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

6.6     Allocation of Plan Distributions Between Principal and Interest. To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for

federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

6.7    Means of Cash Payment. Payments of Cash made pursuant to the Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Creditor Trustee, by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Creditor Trust.  Cash payments to foreign creditors may be made, at the option of the Creditor Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

6.8    Withholding and Reporting Requirements. In connection with the Plan and all distributions hereunder, the Creditor Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Creditor Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

6.9    Setoffs. The Creditor Trust may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy laws, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim or Litigation Claims that the Debtor or the Creditor Trust may have against the Holder of such Claim, provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Creditor Trust of any such Litigation Claim that they may have against such Holder.

## ARTICLE VII

### TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND PENSION PLANS

7.1    Rejection of Executory Contracts and Unexpired Leases. All executory contracts or unexpired leases of the Debtor that have not expired on its own terms or been assumed prior to the Confirmation Date shall be deemed rejected as of the Confirmation Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

7.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases. All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, must be filed with the Bankruptcy Court within thirty (30) days after the earlier of the date of entry of the Confirmation Order or the order of the Bankruptcy Court approving such rejection. Any claims arising from the rejection of an executory contract or unexpired lease not filed within such time will be forever barred from assertion against the Debtor or Creditor Trust, its Estate and property unless

otherwise ordered by the Bankruptcy Court. All such Allowed Claims for which proofs of claim are required to be filed will be, and will be treated as, Allowed General Unsecured Claims subject to the provisions of Article III hereof, subject to any limitation on allowance of such Claims under section 502(b) of the Bankruptcy Code or otherwise.

## ARTICLE VIII

### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

8.1    Objection Deadline, Prosecution of Objections. The Creditor Trust may file objections to Claims with the Bankruptcy Court on or before the Claims Objection Deadline, which shall be ninety (90) days after the Effective Date.  The Creditor Trust shall be authorized to, and shall, resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment (in the Bankruptcy Court or such other court having jurisdiction) as to the validity, nature and/or amount thereof).

8.2    No Distributions Pending Allowance. Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## ARTICLE IX

### CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1    Conditions to Effective Date. The following are condition precedent to the occurrence of the Effective Date: (i) the Confirmation Order confirming the Plan, as such Plan may have been modified, shall be in full force and effect and shall not have been vacated, amended, modified or stayed, and if it is the subject of an appeal, reconsideration or other review, no stay of the Confirmation Order shall be in effect; and (ii) the Creditor Trustee shall have been appointed by the Debtor upon notice to the Bankruptcy Court

## ARTICLE X

### EFFECT OF PLAN CONFIRMATION

10.1    Binding Effect. The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and the Debtor's respective successors and assigns, including, but not limited to, the Creditor Trust.

10.2    Discharge of Claims and Termination of Interests. Pursuant to Section 1141(d)(3), the Debtor shall not receive a discharge upon confirmation of this Plan.

10.3   Litigation Claims.  Litigation Claims to the extent any exist, shall vest with the Creditor Trust and the Creditor Trust shall be authorized to investigate and prosecute such Litigation Claims.

10.4   Term of Bankruptcy Injunction or Stays. All injunctions or stays provided for in the Bankruptcy Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.5   Consideration of Unsecured Claims. The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, sections 510(b) or 510(c) of the Bankruptcy Code, or otherwise. All subordination rights that a Holder of a Claim or Interest may have with respect to any distribution to be made pursuant to the Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined. Accordingly, distributions pursuant to the Plan to Holders of Allowed Claims will not be subject to payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

## ARTICLE XI

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)   Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b)   Resolve any matters related to the rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor or Creditor Trust may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(c)   Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(d)   Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the

Debtor that may be pending on the Effective Date;

(e)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(f)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(g)     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or and/or contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(h)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date, including all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331 503 (b), 1103 and 1129 (c) (9) of the Bankruptcy Code; provided, however, that from and after the Effective Date the payment of fees and expenses of the Creditor Trust, including counsel fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(i)     Issue injunctions, enter and implement other orders or take such other actions as shall be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(j)     Hear and determine Litigation Claims and Avoidance Actions;

(k)     Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(l)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

(m)     Determine any other matters that may arise in connection with or relate to

the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(n)   Enforce all orders, judgments, injunctions, releases, exculpations, indemni-fications and rulings entered in connection with the Bankruptcy Case;

(o)   Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

(p)   Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code: and

(q)   Enter an order closing the Bankruptcy Case.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1   Effectuating Documents and Further Transactions. The Debtor or Creditor Trust is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and any notes issued pursuant to the Plan.

12.2   Corporate Action.  Prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of the Debtor or Creditor Trust shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to the applicable general corporation laws of the state in which the Debtor or Creditor Trust is incorporated without any requirement of further action by the Debtor or Creditor Trust.  The Creditor Trust is authorized to dissolve itself after the later of the Final Distribution Date or the date the Bankruptcy Case is closed.

12.3   Exemption from Transfer Taxes. Pursuant to section 1146 (c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. Unless the Bankruptcy Court orders otherwise, all sales, transfers and assignments of owned and leased property approved by the Bankruptcy Court on or after the Effective Date, shall be deemed to have been in furtherance of, or in connection with, the Plan.

12.4   Bar Dates for Administrative Claims. The Bar Date for filing Administrative Claims (not including Fee Claims), is thirty (30) days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court. Holders of asserted Administrative Claims

that are subject to the Administrative Claims Bar Date shall submit requests for payment on or before such Administrative Claims Bar Date or forever be barred from doing so.

12.5    Payment of Statutory Fees. All fees payable pursuant to section 1930 of title 28 United States Code shall be paid by the Debtor or the Creditor Trust as and when they become due, until the Bankruptcy Case is closed.

12.6    Amendment or Modification of the Plan. Subject to section 1127 of the Bankruptcy Code, the Debtor reserves the right, to alter, amend or modify the Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

12.7    Severability of Plan Provisions. If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.8    Successors and Assigns. The Plan shall be binding upon and inure to the benefit of the Debtor, and its successors and assigns, including, without limitation, the Creditor Trust. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity,

12.9    Revocation, Withdrawal or Non-Consummation. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if confirmation or consummation of the Plan does not occur, then, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other

Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

12.10  Notice. All notices, requests and demands to or upon the Debtor or the Creditor Trust to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

William A. Brandt, Jr.
Chief Restructuring Officer—
Equipment Acquisition Resources, Inc.
70 W. Madison Street, Suite 2300
Chicago, Illinois 60602

with a copy to:

Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606
Facsimile: (312) 876-0288
Attn:  Barry A. Chatz

12.11  Governing Law. Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Illinois, without giving effect to any principles of conflicts of law of such jurisdiction.

12.12  Tax Reporting and Compliance. In connection with the Plan and all instruments issued in connection therewith and distributions thereof, the Debtor, and the Creditor Trust, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Creditor Trust is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through, and including, the Effective Date.

12.13  Schedules. All exhibits and schedules to the Plan, if any, are incorporated and are a part of the Plan as if set forth in full herein.

This Plan of Liquidation has been respectfully submitted on this 19th day of March 2010, by the Debtor.

ATTORNEYS FOR DEBTOR:

By: __/s/ Miriam R. Stein_____
          Miriam R. Stein

Barry A. Chatz
Miriam R. Stein
Kevin H. Morse
ARNSTEIN & LEHR LLP
120 South Riverside Plaza, Suite 1200
Chicago, IL 60606
Phone: (312) 876-7100
Fax: (312) 876-0288